STATE OF NORTH CAROLINA v. ISAAC JOE TAYLOR, JR., ALIAS
MICHAEL ANTHONY YOUNG

No. 8

(Filed 29 January 1976)

1. Criminal Law § 102— actions and argument of prosecutor

   A prosecuting attorney may not place before the jury incompetent
   and prejudicial matters not admissible in evidence or include in his
   argument facts not included in the evidence.

2. Criminal Law § 102— arguments of counsel — discretion of court —
   review

   Arguments of counsel are largely in the control and discretion of
   the trial judge who must allow wide latitude in the argument of the
   law, the facts of the case and all reasonable inferences to be drawn
   from the facts, and the appellate courts ordinarily will not review the
   exercise of the trial judge's discretion in controlling jury arguments
   unless the impropriety of counsel's remarks is extreme and is clearly
   calculated to prejudice the jury in its deliberations.

3. Criminal Law § 102— prosecutor's argument — source of defense coun-
   sel's information

   Defendant in a homicide case was not prejudiced by the district
   attorney's question during jury argument as to where defense counsel
   got information used in questioning a codefendant where the record
   does not show what knowledge the "information" imparted or which
   defendant it might have affected, and the record shows the information
   could have come from persons other than defendant who were present
   when the crime was committed, particularly when the judge instructed
   the jury not to consider such argument.

4. Criminal Law § 102— prosecutor's argument — guilt shown during
   counsel's argument

   The district attorney's jury argument that the truth about de-
   fendant's guilt slipped out during defense counsel's argument to the
   jury did not constitute a comment on defendant's failure to testify
   and was not prejudicial to defendant.

5. Criminal Law § 102— prosecutor's remark about conduct of defense
   counsel

   Defendant in a homicide case was not prejudiced by the district
   attorney's remark that defense counsel was deliberately making a mis-
   statement in cross-examining a witness about the time of a prior con-
   viction.

6. Criminal Law § 92— consolidation of charges against defendants —
   testimony by one defendant

   Defendant was not prejudiced by the consolidation of his murder
   trial with that of a codefendant charged with the same crime even
   though the codefendant elected to testify at the trial and defendant
   was thus deprived of his right to open and close the jury arguments.

7. **Homicide § 24— instructions — burden to rebut malice — Mullaney decision — nonretroactivity**

Where the jury returned a verdict of first degree murder, defendant is not entitled to a new trial under the decision of *Mullaney v. Wilbur*, 421 U.S. 684, because of the court's instructions placing the burden on defendant to rebut the presumption of malice so as to reduce the charge of second degree murder to manslaughter since the jury did not reach the questions raised by *Mullaney* as to instructions relating to second degree murder and manslaughter; furthermore, the *Mullaney* decision is not retroactive and does not apply to defendant's trial which was held some two years prior to that decision.

APPEAL by defendant, Isaac Joe Taylor, Jr., alias Michael Anthony Young, from *Hall, J.,* 18 June 1973 Session of DURHAM Superior Court.

Defendant's counsel gave notice of appeal in open court but the appeal was not perfected within the time allowed. Upon motion of the District Attorney, the appeal was dismissed on 30 January 1975. On 6 May 1975, we issued a writ of certiorari to Durham County Superior Court directing that defendant be allowed to perfect his appeal.

Defendants Isaac Joe Taylor, Jr., alias Michael Anthony Young (hereinafter referred to as Taylor), Schuyler Jones and Ezekial Wright were charged with the crimes of murder in the first degree and armed robbery. Prior to 18 January 1973, Ezekial Wright entered a plea of guilty to the second-degree murder of Charles Edward Thompson. On 18 June 1973, the cases of defendant Taylor and defendant Jones were called for trial upon the charges of murder in the first degree. The cases were consolidated for trial over objection of counsel for each defendant. Each defendant entered a plea of not guilty.

The State's evidence tended to show the following:

Ezekial Wright testified that on 29 December 1972 he was walking along Pettigrew Street in Durham, North Carolina, with defendants Jones and Taylor when they discovered a man lying on the side of the street. Taylor took a wallet that was hanging out of the man's pocket. Finding no money in the wallet, they divided its contents and went to the bus station. Shortly thereafter the man they had robbed (later identified as Charles Edward Thompson) came into the station. Taylor asked Thompson if he wanted to accompany them to a "bootleg house." Thompson indicated that he did and he accompanied them to a house on Queen Street where Taylor "wrestled him into the

State v. Taylor

basement." Taylor demanded that Thompson give him money and Thompson replied that he only had four cents. Taylor, while holding a knife to Thompson's throat, ordered him to take off his clothes. A search of the clothes yielded four pennies. In response to Thompson's pleas that his life be spared, Taylor said "Naw, you get away and get to the police, I got to kill you." Thompson tried to run and Taylor cut him across the chest several times. Upon Taylor's order Jones and Wright tied the victim's hands behind his back with cord taken from a venetian blind lying on the basement floor. Taylor cut a piece of Thompson's trousers and gagged him to quell his screams and pleas. He then tied Thompson into a chair, kicked the chair over and struck him about the head and face five or six times with a piece of cast-iron pipe. The three of them fled. Wright identified several State's exhibits including the knife used to cut the victim, the iron pipe with which Taylor attacked Thompson, and the cord used to tie the victim. On cross-examination, the witness admitted that he had hit and kicked Thompson, and that he had been allowed to plead guilty to second-degree murder.

Lieutenant Richard Morris of the Durham Police Department testified that on 29 December 1972 he went to the basement of a house on Queen Street where he observed the body of Charles Edward Thompson. His hands were tied behind his back and he was gagged. His face was "beaten to a pulp."

Sergeant Patterson of the Durham Police Department testified that he fingerprinted Taylor and that Taylor's fingerprints matched those taken from a venetian blind in the basement of the house on Queen Street.

Dr. Richard Page Hudson, Jr., an expert in medical pathology, testified that he performed an autopsy on the body of Charles Edward Thompson. He described various knife wounds on the body and the wounds about the face and head which were caused by some blunt object. He in part, stated:

> As a result of the autopsy which I performed on the deceased, I am of the opinion that Charles Edward Thompson died of brain injuries secondary to blunt trauma to the head in a beating. Even in the absence of the head injuries that have been described, the victim would have died as a result of the abdominal wounds, unless, of course, he had had fairly rapid surgery for his abdominal wounds.

Either the blows to the head or the blows to his body would have killed him.

The State also offered evidence that certain objects of personal property belonging to Charles Edward Thompson were found in the possession of Jones and Taylor when they were arrested on the morning of 30 December 1972.

Defendant Jones elected to offer evidence and his testimony tended to corroborate the testimony of Ezekial Wright. He also offered some evidence of good character.

Defendant Taylor offered no evidence.

The jury returned a verdict of guilty of murder in the first degree as to James Isaac Taylor, Jr., and a verdict of guilty of murder in the second degree as to defendant Schuyler Jones.

Defendant Taylor appealed from judgment imposing a sentence of imprisonment for the term of his natural life.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General William B. Ray and Special Deputy Attorney General William W. Melvin, for the State.*

*James B. Maxwell for the defendant appellant.*

BRANCH, Justice.

Defendant assigns as error the trial judge's actions in overruling his objections to certain statements made by the District Attorney during his argument to the jury.

[1, 2] A prosecuting attorney may not place before the jury incompetent and prejudicial matters not admissible in evidence or include in his argument facts not included in the evidence. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572, *vacated on other grounds,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873; *State v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664. However, arguments of counsel are largely in the control and discretion of the trial judge who must allow wide latitude in the argument of the law, the facts of the case, as well as to all reasonable inferences to be drawn from the facts. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750; *State v. Westbrook, supra.* See also *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503, *rev'd on other grounds,* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290; *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802, *rev'd on other grounds,* 392 U.S.

649, 20 L.Ed. 2d 1350, 88 S.Ct. 2290. Ordinarily we do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations. *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424; *State v. Bowen, supra.*

[3] It is necessary that we consider separately the portions of the argument questioned by this assignment of error. Defendant first points to this portion of the District Attorney's argument:

> MR. BRANNON: You notice Mr. Edwards examining Mr. Jones asking him some interesting questions, didn't he? I asked him if he didn't go in the basement of the building and feel the man's pulse as well as get your knife. Of course, my question of Mr. Edwards, where did he get that information—
>
> MR. EDWARDS: Objection.
>
> THE COURT: Specifically what are you objecting to?
>
> MR. EDWARDS: Where I got the information.
>
> THE COURT: Sustained. You will not consider that last statement by the Solicitor.

Defendant contends that the evil in this argument lies in that the "information" therein referred to could have come only from someone who was present when the crime was allegedly committed and that the remarks, therefore, tended to place defendant at the scene of the crime.

Initially we note that this record does not contain any part of the jury argument of counsel for defendants. Thus we cannot know whether these isolated remarks of the District Attorney are in reply to arguments of defense counsel or to what extent the District Attorney was provoked by defense counsel's arguments. We do not know what knowledge the "information" imparted or which defendant it might have affected. Further, the record discloses that the "information" could have come from at least two people other than defendant who were present in the courtroom and who by their own admission were present when the crime was committed. Finally, any semblance of prejudice which might have arisen from this portion of the solicitor's argument was removed when the trial judge promptly sustained defendant's objection and instructed

the jury not to consider the portion specifically objected to by defense counsel.

**[4]** The next part of the argument challenged by this assignment of error is as follows:

> MR. BRANNON: The truth of Mr. Jones' guilt slipped out from him on the stand. THE TRUTH ABOUT ISAAC TAYLOR SLIPPED OUT DURING MR. EDWARDS' ARGUMENT TO YOU YESTERDAY. (Emphasis added.)

> MR. EDWARDS: Objection and move for a mistrial.

> OBJECTION OVERRULED. (R pp 49-50)

Defendant takes the position that the above-quoted statement amounts to a comment on defendant's failure to testify.

The provisions of G.S. 8-54 unquestionably prohibit any mention before the jury of a defendant's failure to testify in his own behalf. *State v. McCall,* 286 N.C. 472, 212 S.E. 2d 132; *State v. Buchanan,* 216 N.C. 709, 6 S.E. 2d 521; *State v. Spivey,* 198 N.C. 655, 153 S.E. 255. Here the District Attorney's remarks do not specifically point to defendant's failure to take the stand. In fact, we do not believe that an average juror would so interpret this language. The first sentence in the challenged argument refers to the testimony of defendant Jones who elected to testify. Certainly the District Attorney was within his rights to argue this evidence and any reasonable inference arising therefrom. *State v. Barefoot, supra; State v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648. The District Attorney's comment that the truth slipped out during Mr. Edwards' argument does not appear to be improper. Again we do not have the benefit of knowing what Mr. Edwards said. Even so, the general rule allows counsel to address remarks to the argument of opposing counsel. 75 Am. Jur. 2d TRIAL, § 218, page 300. This assignment of error is overruled.

**[5]** Defendant next assigns as error the failure of the trial judge to grant a mistrial because of derogatory statements made by the District Attorney concerning counsel for defendant. During the cross-examination of the witness Wright by defendant's counsel, the following exchange took place:

> "MR. EDWARDS:

> Q. You have been charged, tried and convicted of Public Drunk?

A. No, I paid a fine of $24.00.

Q. That was on the 24th day of December, 1972, was it not?

A. Of '71.

Q. '71?

A. Actually.

Q. Actually Christmas Eve '71?

A. Yes, that is right, I can prove it because I stayed in jail about two days.

MR. BRANNON: Mr. Edwards has the record in front of him, and it does in fact indicate 12-24-71 so he is deliberately making a misstatement.

MR. EDWARDS: Objection to that.

A. I can tell why, because I was only 16.

MR. EDWARDS: Objection. I am going to move for a mistrial.

THE COURT: You will not consider the remark made by the Solicitor. Dismiss it from your minds." (R pp 38-39)

A similar occurrence during a jury argument appears in the case of *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335. We quote a self-explanatory excerpt from that case:

Defendants assign as error the following part of the solicitor's argument. "There is something in this case that is not very pretty. Mr. Walker, himself a former solicitor of this court until other things tempted him to the place where he now is . . . " The statement about Mr. Walker, who represented defendant Miller at the trial, is not clear, but it is manifest that it was uncomplimentary, and there is nothing in the record before us to justify it. While not so prejudicial as to warrant a new trial, we disapprove of it. Clients, not lawyers, are the litigants. Whatever may be the ill-feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. Canons of Professional Ethics, 62 Reports of American Bar Association 1105 § 17.

In 88 C.J.S. TRIAL § 185 at page 367, it is stated:

. . . Where his remarks are not sustained by the facts it is improper for counsel in argument to make statements reflecting on the character or conduct of the opposite party or his attorney, . . . .

It would seem that this matter of little moment could have been corrected without resorting to charges that counsel was deliberately misleading the court and the jury. We do not approve of statements unnecessarily reflecting upon the character or conduct of a counsel by his adversary at any stage of a trial. Nevertheless we do not find this language sufficiently prejudicial to defendant to warrant a new trial.

[6] Defendant argues that he was denied a fair trial when, over his objection, the trial judge consolidated his case for trial with the case of defendant, Jones.

The State's motion for consolidation was addressed to the trial judge's sound discretion. Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. McVay* and *State v. Simmons,* 277 N.C. 410, 177 S.E. 2d 874. This exercise of discretion by the trial judge will not be disturbed absent a showing that defendant has been deprived of a fair trial by the order of consolidation. *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858.

Defendant seems to take the position that he was seriously prejudiced by the order of consolidation because his codefendant elected to testify.

It is well established in this jurisdiction that an accomplice is always a competent witness. The fact that his testimony is usually induced by a promise of or a hope for leniency goes only to his credibility as a witness. *State v. Woodson,* 287 N.C. 578, 215 S.E. 2d 607; *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334, *cert. denied,* 377 U.S. 978, 12 L.Ed. 2d 747, 84 S.Ct. 1884.

In instant case, another alleged accomplice in the murder, Ezekial Wright, had already entered a plea of guilty and testified for the State. The record does not disclose that the trial judge knew when he entered the order of consolidation that

either the codefendant Jones or Ezekial Wright would testify. In our opinion, the testimony of the codefendant Jones would have carried equal force if it had been received without the order of consolidation. We find no abuse of discretion in the trial judge's order consolidating the cases for trial. Neither do we find merit in defendant's contention that the consolidation of the cases resulted in prejudicial error to him because he was deprived of his right to open and close the jury arguments when his codefendant elected to testify.

It is well settled in this jurisdiction that when there are several defendants and one of them elects to offer evidence, the right to open and conclude the arguments belongs to the State. *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State v. Smith,* 237 N.C. 1, 74 S.E. 2d 291.

[7] Finally defendant, relying on *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881, contends that the trial judge erred by charging the jury that if the State proved beyond a reasonable doubt that defendant killed deceased with a deadly weapon, the law raised presumptions that the killing was unlawful and that it was done with malice. Defendant further argues that under the *Mullaney* rule, it was error to place any burden on defendant to rebut the presumption of malice so as to reduce the charge from second-degree murder to manslaughter.

This argument is feckless. Here all the evidence revealed a cold-blooded killing done with malice and with premeditation and deliberation. The jury returned a verdict of murder in the first degree and therefore never reached the questions raised by *Mullaney* as to instructions relating to second-degree murder and manslaughter. Further, in *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (filed 17 December 1975), we declined to apply the *Mullaney* rule retroactively without further instruction from the United States Supreme Court. *Mullaney* was decided 9 June 1975. This case was tried at the 18 June 1973 Session of Durham Superior Court. Thus, even if otherwise applicable, the rules enunciated in *Mullaney* do not apply to instant case.

We have carefully examined this entire record and find no error which would justify a new trial or warrant that the judgment be disturbed.

No error.