STATE OF NORTH CAROLINA v. BIENVENIDO DIAZ

No. 852SC671

(Filed 17 December 1985)

**Narcotics § 4.1— trafficking in marijuana—insufficiency of circumstantial evidence**

In a prosecution for trafficking in excess of ten thousand pounds of marijuana, the trial court erred in denying defendant's motion to dismiss where there was no direct evidence that defendant actually possessed or transported marijuana, that he rented a car and drove it to the crime scene, or that he fled from the scene during the police officers' raid; rather, in order to convict defendant on theories of acting in concert and constructive possession, the jury would have had to build inference upon inference, and this it could not do.

APPEAL by defendant from *Brown (Frank), Judge*. Judgment entered 1 February 1985 in Superior Court, HYDE County. Heard in the Court of Appeals 31 October 1985.

On 14 May 1984, defendant was charged in a proper bill of indictment with trafficking in excess of ten thousand (10,000) pounds of marijuana in violation of G.S. 90-95(h)(1)(d). From a judgment imprisoning defendant for a term of thirty-five (35) years and imposing a two hundred thousand dollar ($200,000.00) fine, defendant appealed.

*Attorney General Thornburg, by Kaye R. Webb, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant appellant.*

PARKER, Judge.

In his first assignment of error, defendant contends the trial court erred in denying his motion to dismiss the charge against him at the close of the State's evidence because the evidence was insufficient to convince a rational juror beyond a reasonable doubt of his participation in a drug smuggling operation on the night of 1 May 1984. We agree.

On defendant's motion to dismiss, the question for the court is whether there is substantial evidence of every element of the offense, *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984), and the Court must determine from all the evidence, taken in the light most favorable to the State, whether there is substantial evidence that the crime charged has been committed and that the offense was committed by the person accused. *State v. Brown*, 308 N.C. 181, 301 S.E. 2d 89 (1983).

The State's evidence tended to show that on 1 May 1984, law enforcement officers had Carlos Sosa and Herberto Tellez under surveillance at the Holiday Inn in Williamston, North Carolina. At 6:05 p.m., Sosa, operating a tractor-trailer, and Tellez, operating a Ryder Rental truck, left the Holiday Inn and drove to the coast around Long Shoal River. Law enforcement officers thereafter positioned themselves at the head of Fifth Avenue, a private road running between Highway 264 and the Pamlico Sound near Long Shoal River.

Around 1:00 a.m., voices could be heard at the intersection of Highway 64 and Fifth Avenue. Outboard motors in the direction of the river also could be heard. A few minutes later, the tractor-trailer and a Buick Regal came out of Fifth Avenue and turned left on Highway 264. The truck, operated by Sosa, which was stopped by officers, contained 517 bales of marijuana weighing approximately 28,170 pounds. The Buick Regal was stopped and it was occupied by Rolando Tudela, Juan Hernandez, Louis Concepcion and Reineeil Fonseca.

A search of the Buick Regal revealed a Hertz Rental Agreement in the name of Bienvenido Diaz, an airline ticket and a Florida driver's license revocation notice in the name of Alberto Jimenez, a wallet containing a Social Security card and driver's license of Louis Concepcion, and a business card in the name of Juan Hernandez.

Thereafter, the officers went down Fifth Avenue where they met the Ryder Rental truck operated by Tellez. That truck contained 238 bales of marijuana weighing approximately 14,270 pounds. As officers continued toward the river, persons ran toward the marsh and into the water and were told to stop. Approximately ten other persons were taken into custody during this raid. Several other suspects were arrested at various locations in the general vicinity of Long Shoal River over the next several days.

On 5 May 1984, Hyde County Sheriff Roland Dail was driving along Highway 264 in Dare County when he spotted the defendant walking toward Manteo on the right side of Highway 264, approximately five miles north of the Long Shoal River.

At trial, on voir dire, Dail testified he stopped defendant because "it was obvious to me from looking at Mr. Diaz that he didn't have a bit more business being there than I did in Cuba and that he was obviously one of the people involved in this drug deal." Before the jury, Dail testified that he noticed defendant "was Hispanic looking," and that defendant told him he had been out in the swamp for several days and nights. The area where defendant was walking was "just swamp, marsh and woods all the way up," and was approximately ten to fifteen miles from the nearest inhabited area.

Defendant offered no evidence. The court submitted to the jury possible verdicts of (i) guilty of trafficking by possessing or by transporting in excess of 10,000 pounds of marijuana, or (ii) not guilty. The court instructed the jury on theories of guilt according to "acting in concert" and "constructive possession." The jury returned a verdict of "guilty as charged."

"Trafficking in marijuana consists of either selling, manufacturing, delivering, transporting, or possessing 'in excess of 50 pounds (avoirdupois) of marijuana.'" *State v. Goforth*, 65 N.C. App. 302, 305, 309 S.E. 2d 488, 491 (1983); G.S. 90-95(h)(1). "It is not necessary for defendant to do any particular act constituting at least part of the crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he was acting together with another who did the act necessary to constitute a crime pursuant to a common plan or purpose to com-

mit a crime." *State v. Begley,* 72 N.C. App. 37, 40, 323 S.E. 2d 56, 57-58 (1984).

Moreover, "[t]he doctrine of constructive possession applies when a person lacking actual physical possession nevertheless has the intent and capability to maintain control and dominion over a controlled substance." *State v. Baize,* 71 N.C. App. 521, 529, 323 S.E. 2d 36, 41 (1984). Constructive possession has been found when the narcotics were (i) on property in which the defendant had some exclusive possessory interest and there is evidence of his or her presence on the property; (ii) or property of which defendant, although not an owner, had sole or joint physical custody; or (iii) in an area which the defendant frequented, usually near his or her property. *Id.*

In our judgment the State has failed to produce substantial evidence that the crime charged had been committed and that the offense was committed by defendant. The State presented no direct evidence that defendant actually possessed or transported marijuana. Under the evidence presented at trial, "[t]he State is thus met head-on by our rule that in circumstantial evidence cases inferences may not be built upon inferences in order for the fact-finder to reach the ultimate facts upon which guilt must be premised." *State v. LeDuc,* 306 N.C. 62, 78, 291 S.E. 2d 607, 617 (1982). In *LeDuc,* our Supreme Court held that defendant's motion to dismiss should have been granted where defendant was charged with conspiring with others to possess 22.4 pounds of marijuana. The Court addressed an argument similar to the one presented here as follows:

> [T]here is no direct evidence that defendant chartered the boat, participated in its navigation, or was ever aboard at the time marijuana was being transported. The jury could, of course, reasonably infer from other evidence adduced that all of these things were true. It could infer, from similarity in the signatures of the Florida driver's license shown to the owners of the trawler, that defendant was the same Milan LeDuc who arranged for and executed the charter. It could infer from defendant's fingerprints found aboard the vessel, the places where these prints were found, and defendant's Coast Guard license application, that defendant had participated in navigating the trawler and was on board at the

time marijuana was being transported. It is only by building on these inferences, however, that the jury might then further infer that defendant participated in an unlawful agreement to possess marijuana. *Id.* at 77-78, 291 S.E. 2d at 616-17.

In the instant case, there is no direct evidence that defendant rented the Buick Regal, drove it to the Long Shoal River site, or fled from the scene during the police officers' raid. Nor was there any direct evidence that defendant participated in any of the criminal operations in progress on the night of 1 and 2 May 1984. The jury could have inferred from the presence of the rental agreement in the car that defendant, in fact, rented the vehicle, and then infer further that defendant drove the vehicle to the Fifth Avenue location. It could infer from defendant's location when he was apprehended and his statement that he had been lost in the woods for several days that defendant fled from the scene when the law enforcement officers arrived. By inferring that defendant was present at the scene, the jury could then infer that defendant "acted in concert" with another to commit a crime pursuant to a common plan or purpose. By inferring that defendant was "acting in concert" because of his presence at the scene of the crime, the jury could then further infer that defendant "constructively possessed" the marijuana in either of the stopped vehicles which were being driven away from the smuggling site by independent drivers. Only by building on these inferences, however, could the jury then infer that defendant participated in the unlawful smuggling operation. As in *LeDuc*, this evidence was insufficient to carry the case to the jury.

In addition, the following language from *Baize, supra,* is instructive:

> We have found no acting in concert case in which the State was allowed to leap, in one single bound, the double hurdles of constructive presence *and* constructive possession. To allow the State to do so on the facts of this case would effectively permit the State to stack inference upon inference . . . . 71 N.C. App. at 530, 323 S.E. 2d at 42.

"If the evidence 'is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed. . . . This is true even though the suspicion so

aroused by the evidence is strong.'" *LeDuc*, 306 N.C. at 75, 291 S.E. 2d at 615, quoting *In re Vinson*, 298 N.C. 640, 657, 260 S.E. 2d 591, 602 (1979).

Because we conclude defendant's motion to dismiss should have been granted, we need not discuss the remaining assignments of error.

We, therefore, vacate the judgment of conviction.

Vacated.

Judges ARNOLD and WELLS concur.