STATE OF NORTH CAROLINA v. RUBEN ABURTO DIAZ AND JOSE JUAN ESPINOZA LOPEZ

No. COA02-145

(Filed 31 December 2002)

**1. Drugs—cocaine trafficking—acting in concert**

The trial court did not err by instructing the jury on acting in concert for cocaine trafficking charges that arose from observation of four men at a motel, and the discovery of two kilograms of cocaine on an embankment, where defendants argued that they were not present when the offenses occurred. However, defendants were present when the drugs were brought to the city and were involved in the transportation of the drugs between motels.

**2. Evidence—detective's observations—rationally based on perceptions**

The trial court did not err in a cocaine trafficking prosecution by allowing a detective to testify concerning "indicators of drug trafficking" during his personal observation of the events surrounding defendants' check-in at a motel where the detective merely explained why he was suspicious after observing defend-

STATE v. DIAZ

[155 N.C. App. 307 (2002)]

ants' conduct and did not testify that defendants were in possession of drugs. The testimony was rationally based on the witness's perception and helpful to a clear understanding of a fact in issue.

**3. Evidence—police officer's opinion—drug dealers' use of motels**

The trial court in a cocaine prosecution correctly allowed an officer to testify about a special focus on hotels in Greensboro for drug interdiction because the officer's job and his experience made him better qualified than the jury to form the opinion that drugs had come into the city from individuals who were using hotels and motels within city limits.

**4. Searches and Seizures—warrantless—motel rooms— rented by others**

A cocaine defendant had no reasonable expectation of privacy in motel rooms which were searched without a warrant where both of the rooms were rented by others. One of the rooms was rented by the person who consented to the search and, while defendant may have possessed a second or third key to the other room, this does not confer a reasonable expectation of privacy.

**5. Criminal Law—opening and closing arguments—multiple defendants—evidence offered by one**

The trial court did not err in a cocaine prosecution of multiple defendants by denying one the last closing argument where another had introduced evidence. The right to open and close arguments belongs to the State where there are several defendants and one elects to offer evidence.

**6. Appeal and Error—plain error analysis—not extended beyond evidence and instructions**

Plain error analysis did not extend to the question of whether an experienced, competent interpreter should have been present at all times in the courtroom.

**7. Drugs—cocaine—trafficking, possession, conspiracy—sufficiency of evidence**

The evidence was sufficient for the trial court to deny defendant Lopez's motion to dismiss charges of trafficking in cocaine, possession, and conspiracy.

**STATE v. DIAZ**

[155 N.C. App. 307 (2002)]

Appeal by defendants from judgments entered 14 August 2001 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 28 October 2002.

*Roy Cooper, Attorney General, by Newton G. Pritchett, Jr., David J. Adinolfi, II, Assistant Attorneys General, for the State.*

*Staples Hughes, Appellate Defender, by Aaron Edward Carlos for defendant-appellant Diaz; and Angela H. Brown for defendant-appellant Lopez.*

THOMAS, Judge.

Defendants, Ruben Aburto Diaz and Jose Juan Espinoza Lopez, appeal convictions of trafficking in cocaine by possessing in excess of 400 grams, possession with intent to sell or deliver cocaine, and conspiracy to traffic in cocaine. They were each sentenced to a minimum prison term of 175 months to 219 months. For the reasons herein, we find no error.

The State's evidence tends to show the following: Detective B.A. Bissett of the Greensboro Police Department's Vice and Narcotics Division received a telephone call from a confidential and reliable source. Based on the discussion that ensued, Bissett went to the Best Western Motel in Greensboro, North Carolina, and inquired about the registration of Lopez. Bissett discovered Lopez's full name, Jose Espinoza Lopez, his address in Reading, Pennsylvania, and that Lopez had a Pennsylvania license plate but a North Carolina driver's license. He further found that Lopez checked into Room 233 on the morning of 9 August 2001 without a reservation, paid for two nights in advance with cash, and requested no maid service. These facts heightened Bissett's suspicion of Lopez. Based on his experience as a narcotics detective, Bissett noted that people traveling long distances usually make reservations in advance and use a credit card. Further, regarding the "no maid service" request, Bissett noted that "individuals involved in the illicit drug trade do not want people coming in their room and doing anything because they're usually trying to hide something."

Bissett set up surveillance of Room 233 and Lopez's green Honda. Additional information from his source compelled Bissett to return to the motel office two days later, on 11 August 2001, to inquire about the registration of Arturo Gonzalez Ortuno. He learned that Ortuno checked into Room 244 without first making a reservation, paid with cash for five days, and requested no maid service.

Bissett then asked his department for assistance with surveillance so that both Room 233 and Room 244 could be observed. Early on the afternoon of 11 August 2001, a man identified as Diaz was seen leaving Room 233 and entering Room 244. This was the first time Bissett realized there was any link between the rooms and their occupants.

Soon thereafter, Diaz, Ortuno, a man named Jafet Gomez, and a fourth man never identified, were seen leaving Room 244 and getting into Ortuno's Eagle Vision vehicle. The police did not follow them. Upon return to the motel, the men went to Room 244. After a short while, they got back in the Eagle Vision with the police following them and went to a residence in Graham, North Carolina. After thirty minutes, the men left the Graham residence.

On the morning of 12 August 2001, Bissett noted that neither Diaz's green Honda nor Ortuno's Eagle Vision were in the motel parking lot. Seeing maids cleaning Room 244, Bissett asked a motel employee to retrieve the room's trash. The trash contained a receipt for digital scales, a piece of paper with handwritten calculations, and four different containers of inositol. Inositol is a substance mixed with cocaine to increase its weight, thereby increasing its street value. Bissett testified that scales are used to weigh and divide into grams the cocaine/inositol mix for the purpose of sale. Considering the purchase of scales, the calculations, and the amount of inositol, Bissett estimated that the individuals occupying the room "probably had somewhere in the neighborhood of six kilograms of cocaine."

Believing he then had probable cause to obtain a search warrant for both rooms, Bissett requested electronic surveillance of Room 233 and aid from additional police officers. Officer R.D. Koonce conducted video surveillance of Room 233 while other officers observed Room 244 and perimeter locations.

Shortly after noon, Ortuno arrived at the motel parking lot. Bissett watched as Ortuno took a paper bag from the trunk of a white Chevy Cavalier to Room 244. Soon thereafter, Ortuno and Gomez went to Room 233 where they remained for "quite some time." Diaz was observed exiting and then returning to Room 233 several times. Ortuno and Gomez then left the motel in Ortuno's vehicle.

Detective Kyle Shearer, having received a radio broadcast that Ortuno and Gomez were leaving the motel, followed them and maintained close visual surveillance. The two men eventually pulled over

STATE v. DIAZ

[155 N.C. App. 307 (2002)]

to a curb, removed a box from the trunk, and put it on the roadside embankment. Told the men had returned to the motel, Detectives Shearer and Bissett went to the embankment and found a box containing approximately two kilograms of cocaine.

Koonce, meanwhile, maintained surveillance of the parking lot and Room 233. He observed Ortuno and Gomez return. The two men removed a small blue bag from the trunk of the white Chevy Cavalier and went to Room 233. Eventually, both men left Room 233 and went to Room 244. They then left the motel, Ortuno in the Eagle Vision and Gomez in the Chevy Cavalier. Ortuno and Gomez were followed by the police and, approximately eight miles from the motel, arrested. The Eagle Vision contained $6000 in cash. A blue apron containing $2000 was found in the Chevy Cavalier.

As Ortuno and Gomez were being arrested, Shearer remained at the motel and observed Diaz leaving Room 233 with two small suitcases and entering Room 244. Shearer took Diaz into custody and left him in Room 244 with several detectives. Upon returning to the parking lot, Shearer saw Lopez arriving in the green Honda. After identifying himself, Shearer arrested Lopez. Lopez admitted that he had rented Room 233, but said he was not staying in it. Shearer then escorted Lopez to Room 233, where Lopez consented to a search. The search revealed three "bricks," or kilos of cocaine.

Pursuant to a plea arrangement with the State, Ortuno testified against Diaz and Lopez. Ortuno admitted that, in exchange for $6000, he agreed to help Gomez "move" some packages arriving from Winston-Salem, North Carolina, which Gomez had said contained marijuana. When Diaz and Lopez arrived from Winston-Salem with luggage containing cocaine, Ortuno protested, but felt he had to do what he was told because of threats from Gomez. Lopez and Diaz then took the packages of cocaine to the Days Inn Motel in Greensboro.

Eventually, Ortuno and Gomez went to the Days Inn. There, Gomez told Diaz to put the packages in Gomez's white Chevy Cavalier. Ortuno, Gomez, and Diaz proceeded to rent rooms at Motel 8, a neighboring motel, with Lopez arriving later. Lopez asked Diaz if he had sold the packages. Diaz said he had not. Lopez responded that he would need to take them to Virginia. Ortuno testified that Lopez had agreed to pay Diaz $24,000. Lopez returned the next day and took Diaz to yet another motel because he said he believed people were watching them.

On 12 August 2001, Ortuno and Gomez attempted to sell two packages of the cocaine to a man in Burlington, North Carolina, but were told the cocaine was "not right" or "no good." Gomez was angered by this, and confronted Diaz. He told Diaz "he was not going to help him anymore. He told him to take his packages." Finally, Gomez agreed he would help but Diaz would have to wait a couple of days. Gomez then told Ortuno to take him somewhere to hide the packages. It was at this time that the two men were observed placing the box containing two kilograms of cocaine on the embankment.

After hiding the box, Ortuno and Gomez went to Room 233. There, Ortuno heard Diaz call Lopez and ask if he would arrive soon. Lopez said yes. Ortuno and Gomez then returned to their room. After receiving $6000, Ortuno left, "[b]ecause [he] didn't have anything else to do with them." He met Lopez and Diaz again in jail, however. Both defendants repeatedly told Ortuno not to say anything to the police.

The defendants elected not to present evidence and their motions to dismiss at the close of the State's evidence and at the close of all the evidence were denied.

The trial court instructed the jury that it could use the theory of acting in concert in addition to the theory of constructive possession as to the charges of trafficking in cocaine by possessing at least 400 grams and possession with intent to sell or deliver. The jury found defendants guilty.

On appeal, Diaz and Lopez each set forth four assignments of error. Diaz contends the trial court erred in: (1) giving a jury instruction on acting in concert; (2) overruling his objections to Bissett's testimony regarding "indicators of drug trafficking" and "special focus" of motels for drug trafficking; (3) not suppressing evidence seized during unreasonable searches; and (4) denying him the last closing argument.

Lopez asserts the trial court erred in: (1) giving a jury instruction on acting in concert; (2) overruling his objection to the testimony concerning indicators of drug trafficking; (3) trying him without a competent, experienced Spanish-speaking translator at all times in the courtroom; and (4) denying his motion to dismiss at the close of all the evidence for insufficiency.

We combine both defendants' assignments of error (1) and (2) above and address them first. We then address Diaz's two remaining

assignments of error. Finally, we examine Lopez's remaining two assignments of error.

[1] By their first assignment of error, defendants argue that the trial court erred in instructing the jury on the theory of acting in concert for the trafficking charges. Specifically, they assert: (1) there was insufficient evidence to support the instruction; and (2) the instruction, combined with a constructive possession instruction, was misleading and denied defendants their right to a unanimous jury verdict. We disagree.

Section 90-95(a) of the North Carolina General Statutes provides:

(a) Except as authorized by this Article, it is unlawful for any person:

(1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance;

(2) To create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance;

(3) To possess a controlled substance.

Section 90-95(h) provides:

(3) Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, . . . or any mixture containing such substances, shall be guilty of a felony, which felony shall be known as "trafficking in cocaine" and if the quantity of such substance or mixture involved:

. . . .

c. Is 400 grams or more, such person shall be punished as a Class D felon and shall be sentenced to a minimum term of 175 months and a maximum term of 219 months in the State's prison and shall be fined at least two hundred fifty thousand dollars ($250,000).

The "knowing possession" element of the offense of trafficking by possession may be established by a showing that: (1) the defendant had actual possession; (2) the defendant had constructive possession; *or* (3) the defendant acted in concert with another to commit the crime. *State v. Garcia*, 111 N.C. App. 636, 639-40, 433 S.E.2d 187, 189 (1993) (emphasis added).

A defendant has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or with others, he has the power and intent to control its disposition or use. *State v. Crawford*, 104 N.C. App. 591, 600, 410 S.E.2d 499, 504 (1991). Constructive possession occurs when a defendant has both the power and intent to control the disposition of the contraband, although he is not in actual possession. *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989). Under the theory of acting in concert, a defendant need not do any particular act constituting some part of the crime. However, he must be "present at the scene of the crime" and "act[ ] together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979).

The acting in concert theory is not generally applicable to possession offenses, as it tends to become confused with other theories of guilt. *State v. James*, 81 N.C. App. 91, 97, 344 S.E.2d 77, 81 (1986) (citing *State v. Baize*, 71 N.C. App. 521, 323 S.E.2d 36 (1984), *rev. denied*, 313 N.C. 174, 326 S.E.2d 34 (1985)). Our courts have instructed juries on both constructive possession and acting in concert in possession cases. *See State v. Garcia*, 111 N.C. App. 636, 433 S.E.2d 187 (1993); *State v. Autry*, 101 N.C. App. 245, 399 S.E.2d 357 (1991); *State v. James*, 81 N.C. App. 91, 344 S.E.2d 77 (1986); *State v. Diaz*, 78 N.C. App. 488, 337 S.E.2d 147 (1985), *reversed on other grounds*, 317 N.C. 545, 346 S.E.2d 488 (1986). Nonetheless, in *State v. Baize*, this Court held that "[w]e have found no cases to support a conviction for possession of drugs under the acting in concert doctrine when the drugs are on another person and *entirely* under that person's physical control." *Baize*, 71 N.C. App. at 529, 323 S.E.2d at 41. (Emphasis added).

Defendants argue that the acting in concert theory did not apply to the possession or trafficking charges because neither defendant was actually present when the offenses occurred. Just before Ortuno and Gomez placed the two kilograms of cocaine on the roadside embankment, Diaz was seen going back and forth between Rooms 233 and 244. While the drugs were being placed on the embankment, Diaz was being arrested as he was leaving Room 233 and entering Room 244. Further, he was not present when the police discovered cocaine in Room 244.

Likewise, Lopez was not present when the drugs were left on the embankment. He was arrested in the parking lot upon his return to the motel after the arrests of Gomez and Ortuno. He was then

escorted by police to Room 244. He had checked out of that room the day before, on 11 August 2001, and had not been seen there since 10 August 2001.

Nonetheless, both defendants were present when the drugs were brought to Greensboro from Winston-Salem, according to the testimony of Ortuno. Further, both defendants transported the drugs to the Days Inn Motel when they checked out of the Best Western Motel.

In giving the instruction, the trial court relied on *State v. Garcia,* 111 N.C. App. 636, 433 S.E.2d 187 (1993). In *Garcia,* there was evidence that the defendant had constructive possession *and* was acting in concert. Here, there is evidence that both defendants were present when the trafficking and possession offenses occurred. We therefore hold that the trial court did not err in instructing the jury on acting in concert.

**[2]** By their second assignment of error, defendants contend the trial court erred in overruling their objections to Bissett's testimony regarding "indicators of drug trafficking" and "special focus" of motels for drug trafficking. They argue the opinion testimony was more prejudicial than probative of any fact in issue and should have been excluded under Rule 701 of the North Carolina Rules of Evidence. We disagree.

Rule 701, which governs opinion testimony by lay witnesses, states that:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2001).

Defendants object to Bissett's testimony concerning his personal observation of the events surrounding defendants' check-in at the motel. Based on this observation, Bissett became "suspicious," and said it lead him to further investigate by "set[ting] up surveillance . . . to watch and see what the individuals that are there are doing."

Such testimony was rationally based on Bissett's perception and helpful to a clear understanding of the determination of a fact in issue. Bissett did not state that it was his opinion that defendants

were in possession of drugs. He was merely explaining why he was suspicious of defendants after observing their conduct. His testimony was helpful to the fact-finder in having a clear understanding of his investigative process. As such, it was admissible.

[3] Diaz further objects to Bissett's testimony concerning "special focus" on hotels in Greensboro for drug interdiction purposes. However, Rule 702 provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702 (2001).

The nature of Bissett's job and his experience make him better qualified than the jury to form the opinion that "a large influx of narcotics . . . have come into the city" by "individuals [who] were utilizing hotels and motels within the city limits to distribute narcotics." We therefore hold that Bissett's testimony was correctly allowed. This assignment of error has no merit.

[4] By defendant Diaz's third assignment of error, he contends he is entitled to a new trial because the trial court erred in failing to suppress evidence seized during the warrantless and unreasonable searches of Rooms 233 and 244. We disagree.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In order to challenge a search as unreasonable under the Fourth Amendment, an individual must show a "legitimate expectation of privacy" in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 138, 58 L. Ed. 2d 387, 398 (1978), *reh'g denied*, 439 U.S. 1122, 59 L. Ed. 2d 83 (1979).

Lopez consented to the search of Room 233, which Lopez himself had rented. Fourth Amendment rights are personal; they may not be asserted vicariously. *State v. Jordan*, 40 N.C. App. 412, 252 S.E.2d 857 (1979) (holding that because defendant did not have a legitimate expectation of privacy in his passenger's pocketbook and therefore even if the search was unreasonable it did not violate defendant's Fourth Amendment rights). Therefore, Diaz's ar-

gument that his rights were violated by the search of Room 233 is without merit.

Diaz also did not have a legitimate expectation of privacy in Room 244, which was rented by Ortuno. *See United States v. Grandstaff*, 813 F.2d 1353 (9th Cir. (Ariz.) 1987), cert. denied, 484 U.S. 837, 98 L. Ed. 2d 78 (1987) ("Although a guest who stays overnight and keeps personal belongings in residence of another might have a reasonable expectation of privacy . . . mere presence in hotel room of another is not enough."). Additionally, in *State v. McMillan*, 147 N.C. App. 707, 557 S.E.2d 138 (2001), *disc. review denied*, 355 N.C. 219, 560 S.E.2d 152 (2002), this Court held that an individual has no legitimate expectation of privacy in a hotel room that he is not renting and in which he does not plan to spend the night.

Diaz argues, however, that the search violated his rights because Gomez had given him the key to Room 244. He maintains that since Ortuno gave the only testimony relevant to the matter, and he testified that Diaz did have a key, the trial court's finding that Diaz did not have a key to Room 244 is error. Even assuming Gomez had given Diaz a key to Ortuno's room, Diaz's Fourth Amendment rights were not violated. While possession of a second or third key to Room 244 may have given Diaz a subjective expectation of privacy in the room, we do not think such mere possession confers a reasonable expectation of privacy, an expectation "rooted in 'understandings that are recognized and permitted by society.'" *Minnesota v. Olson*, 495 U.S. 91, 100, 109 L. Ed. 2d 85, 95 (1990). As Diaz had no legitimate expectation of privacy in Rooms 233 and 244, his rights were not violated by those searches. This assignment of error lacks merit.

[5] By defendant Diaz's final assignment of error, he contends he is entitled to a new trial because the trial court denied him the last closing argument. We disagree.

When a defendant does not present any evidence during the guilt-innocence phase, he is entitled to both the first and the last closing arguments. *State v. Taylor*, 289 N.C. 223, 221 S.E.2d 359 (1976). However, "when there are several defendants and one of them elects to offer evidence, the right to open and conclude the arguments belongs to the State." *Id.* at 231, 221 S.E.2d at 365.

In the instant case, although Diaz did not introduce evidence, defendant Lopez introduced evidence of Ortuno's driver's license. Lopez's introduction of this evidence thus denied Diaz the opportu-

STATE v. DIAZ

[155 N.C. App. 307 (2002)]

nity for the last closing argument. *See State v. Reeb,* 331 N.C. 159, 415 S.E.2d 362 (1992). Consequently, this assignment of error is overruled.

**[6]** By his third assignment of error, defendant Lopez argues that it was plain error for him to be tried without a competent, experienced interpreter present at all times in the courtroom to translate the proceedings as they occurred and he is entitled to a new trial. We disagree.

We note that counsel did not object and we consider this argument under a plain error analysis. *State v. Perkins,* 154 N.C. App. 148, 571 S.E.2d 645 (2002). Plain error is "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *State v. Jones,* 137 N.C. App. 221, 226, 527 S.E.2d 700, 704, *appeal dismissed, rev. denied,* 352 N.C. 153, 544 S.E.2d 235 (2000).

However, our Supreme Court has declined to extend plain error analyses beyond issues regarding jury instructions and evidentiary matters. *State v. Atkins,* 349 N.C. 62, 81, 505 S.E.2d 97, 109-10 (1998), *cert. denied,* 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). Since defendant's contentions do not involve jury instructions or evidentiary matters, we likewise decline to extend a plain error analysis to his argument and do not reach it.

**[7]** By defendant Lopez's final assignment of error, he argues the trial court erred in denying his motion to dismiss based on insufficiency of the evidence. We disagree.

In considering a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences which may be drawn from the evidence. *State v. Hairston,* 137 N.C. App. 352, 528 S.E.2d 29 (2000). The standard of review for a motion to dismiss based on insufficiency of the evidence is the substantial evidence test. *State v. Jones,* 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993), *disc. review denied,* 336 N.C. 612, 447 S.E.2d 407 (1994). Substantial evidence is defined as the amount of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). If there is substantial evidence

of each element of the charged offense and of the defendant being the perpetrator of the offense, the case is for the jury and the motion to dismiss should therefore be denied. *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

Under the charge of possession with the intent to sell or deliver cocaine, the State has the burden of proving: (1) the defendant possessed the controlled substance; and (2) with the intent to sell or distribute it. *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72-73 (1996). To prove the offense of trafficking in cocaine by possessing in excess of 400 grams, the State must show: (1) possession of cocaine; and (2) that the amount possessed was more than 400 grams. *State v. Mebane*, 101 N.C. App. 119, 123, 398 S.E.2d 672, 675 (1990), *overruled on other grounds by State v. Pipkins*, 337 N.C. 431, 446 S.E.2d 360 (1994). Criminal conspiracy involves an agreement of two or more persons to do an unlawful act or to do a lawful act by unlawful means. *State v. Richardson*, 100 N.C. App. 240, 395 S.E.2d 143, *appeal dismissed and rev. denied*, 327 N.C. 641, 399 S.E.2d 332 (1990). Conspiracy may be proven by direct or circumstantial evidence. *State v. Lyons*, 102 N.C. App. 174, 401 S.E.2d 776, *cert. denied*, 329 N.C. 791, 408 S.E.2d 527, *aff'd*, 330 N.C. 298, 412 S.E.2d 308 (1991).

In the instant case, there was evidence that: (1) Lopez transported the drugs to Greensboro from Winston-Salem; (2) Lopez met with Diaz, Gomez and Ortuno in a motel room; (3) Lopez rented a room at the motel under suspicious circumstances; (4) Lopez did not relinquish his key and had continuous access and control of his room; (5) all co-defendants discussed the sale of the drugs; (6) Lopez stated he needed to take the unsold drugs to Virginia; (7) Lopez's room had approximately six kilograms of cocaine and packaging materials; (8) Lopez had agreed to pay Diaz what looked to be $24,000; (9) Lopez took Diaz to another hotel because he believed people were watching them; and (10) Lopez told Ortuno not to say anything to the police. In the light most favorable to the State, there was sufficient evidence of trafficking, possession and conspiracy elements and that Lopez was one of the perpetrators. This argument is overruled.

We therefore find no error in defendants' convictions.

NO ERROR.

Chief Judge EAGLES and Judge TYSON concur.