STATE OF NORTH CAROLINA v. CONNELL CARROLL AND ARCHIE MOORE STEWART

No. 31

(Filed 13 December 1972)

1. **Constitutional Law § 29; Jury § 7— jury selection — racial discrimination —.racial designation on tax and voter lists**
    Defendants' evidence that the tax and voter registration lists, from which the jury list was made up, designate race by W. and C. was insufficient to make a *prima facie* case of racial discrimination in the selection of the trial jury where the evidence also showed that there was no designation of race or color in the preparation of the jury list or the discs used for drawing a jury, that the discs contain only numbers and no names, that the jurors are chosen by drawing a disc and matching its number with numbers on the jury list, and that from four to eight colored jurors reported for jury service each term.

State v. Carroll

2. **Criminal Law § 75— admissibility of confession**

Defendants' confessions were properly admitted in their trial for first degree murder where the uncontradicted evidence on *voir dire* showed that the arresting officer personally knew the defendants and took great pains to explain their rights before he would permit them to make any statements or sign any waivers, and the trial court concluded that the confessions were in fact voluntarily made.

3. **Criminal Law § 26; Homicide § 31— murder in perpetration of robbery — separate punishment for robbery — double jeopardy**

Where defendant's conviction of first degree murder was based on a jury finding that the murder was committed in the perpetration of an armed robbery, no separate punishment can be imposed for the armed robbery.

4. **Constitutional Law § 36; Criminal Law § 135; Homicide § 31— first degree murder — unconstitutionality of death penalty**

The death penalty may not be imposed for the crime of first degree murder where the court or the jury is given the discretion to decide whether punishment shall be death or life imprisonment.

APPEAL by defendants from *Brewer, J.,* April 10, 1972 Criminal Session, JOHNSTON Superior Court.

In these criminal prosecutions both defendants, Connell Carroll and Archie Moore Stewart, were charged by grand jury indictments with the first degree murder and the armed robbery of Clarence Hill. The offenses occurred on December 17, 1971, in Johnston County. After the defendants were arrested, the present attorneys of record were appointed as their counsel. Indictments thereafter were duly returned. The defendants, on application of their counsel, were committed to Dorothea Dix Hospital for psychiatric evaluation. After the examination was completed, the hospital certified as to each defendant, "Without psychosis . . . competent to stand trial . . . ."

Upon arraignment, and before plea, each defendant alleged he was a member of the Negro race; that Clarence Hill, the victim, was a member of the white race; and in the selection of the grand jury which returned the indictments, the regular jurors, and the special venire, the members of defendants' race were systematically excluded from the jury list. The defendants moved the indictments be quashed, the regular panel and the special venire be dismissed, and the court "order a fair and just selection of jurors."

At the beginning of the court's inquiry into the manner of jury selection, the defendants and the State entered into certain

stipulations, among them the following: "The defendants abandoned Paragraph 7 of the petition to quash as same relates to the organization and construction of the Grand Jury panel." The parties further stipulated: ". . . (A)ccording to the United States 1970 Census there were 61,737 inhabitants in Johnston County . . . 13,096 members of the black race or approximately 21% of the total." The evidence disclosed that 46 regular jurors were drawn for service at the trial here involved. However, only 28 of those drawn appeared in court. Among this number were four members of the Negro race. The record does not disclose how many of those excused or failed to appear were also of the Negro race.

The defendants introduced evidence tending to show that 46 names are regularly drawn for jury service at each term of court except those terms in which a grand jury is required and in that event 55 are drawn. No records were kept showing race during recent terms of criminal court. However, the oral evidence disclosed that at such terms from 4 to 8 blacks were on the panel.

The evidence disclosed that the jury list in Johnston County is made up from the tax list and the voter registration list. Approximately 29,000 names were on the tax list and 30,800 were on the voter registration list. Patently most taxpayers are voters and most voters are taxpayers. The lists were given to the Jury Commission for the purpose of eliminating the duplications, striking the names of those who are deceased or have removed from the county, and those who have been convicted of felonies or otherwise disqualified to serve as jurors. The voter registration list designates race by W. and C. The tax list also designates race in the same manner.

In making up the jury list, the Jury Commission first eliminates the duplications in the tax and voter registration lists and thereafter by inquiry determines and removes the names of those deceased, removed from the county, the felons, and those otherwise disqualified for jury service. Approximately 7% of those on the list were removed for reasons other than duplications. The final jury list contains about 29,000 names, each numbered serially. Nothing whatever on the jury list indicates race or color. The testimony disclosed that no one was left off the list by reason of race or color.

After the list was completed, a disc was made and numbered for each name on the list. However, there was nothing on

the disc except the serial number. The jurors were drawn for each session of court by drawing a disc and thereafter determining the identity of the juror drawn by matching the disc and the number on the jury list.

The foregoing is a summary of the evidence offered by the defendants. The evidence being free of contradiction, the court concluded that the defendants had failed to make out a prima facie case of racial discrimination in the selection either of the regular jury or of the special venire. The court denied the motions to dismiss both the regular panel and the special venire.

After the jury was selected in the manner indicated and empaneled, the State offered evidence tending to show the following: For 20 years prior to December 17, 1971, Clarence Hill, a white man, had operated a country store and filling station near Moore's School in Johnston County. Thurman Raper, who lived about one-half mile from Hill's store, testified that on December 17, 1971, he went to the store about 1 o'clock and remained with Mr. Hill until about 3:30 when he went home. About 2 o'clock the defendants, Connell Carroll and Archie Moore Stewart, came to the store apparently on foot. They stayed at the store and were playing checkers when he left. Bobby Narron testified that the defendants were in the Hill store playing checkers when he left the store at about 4:15. Rudy Johnson, who lived nearby, testified he went to the store about 4:40 and found Mr. Hill's dead body behind the counter near the cash register. Dr. Richardson was called, examined the body, and discovered a bullet wound in the head which in his opinion had caused death.

Deputy Sheriff Lewis, who lived nearby, was called and given the information that two colored boys were left in the store shortly before Mr. Hill's body was discovered. Officer Lewis began an investigation and found the two defendants on foot a short distance from the store. They were endeavoring to "thumb a ride." Before asking any questions he gave the defendants the full warnings, reading from a prepared statement. After having their rights explained to them, each stated that he understood them fully, was willing to make a statement, and that he did not want a lawyer present. Officer Lewis was well acquainted with the defendants. He offered to contact a lawyer or permit the defenders to use the telephone to make any calls that they wished. They stated their willingness to talk, to make statements, did not desire a lawyer, or that anyone be called.

The defendants consented to be searched. Carroll had in his right back pocket a wad of money which he said he had found beside the road. The defendant Stewart had $191.00 in the lining of his hat. The boys were questioned in the presence of each other. Their stories agreed that earlier in the day they had planned to rob the Narron store which is located near the Hill store. Carroll had a .45 army pistol. They left home, went to the Narron store, found it closed, then decided to rob the nearby Hill store.

They found a number of customers at the Hill store. They played checkers until all those present had left. Then Carroll approached Mr. Hill near the cash register, shot him one time with the .45 automatic pistol, took the money from Mr. Hill's pocket, and all except the change from the cash register. They also took Mr. Hill's .22 caliber revolver. They left the store on foot, turned down a dirt road where they threw the two pistols into the woods and returned to the highway where Sheriff Lewis apprehended them. They agreed to, and did, show Officer Lewis where they had thrown the pistols. It was then dark and rainy and no search was made for the weapons until the following day. Officer Lewis went back to the place indicated and recovered the .45 automatic pistol and the .22 revolver. Officer Lewis found a .45 caliber empty cartridge case in Hill's store. Ballistic tests disclosed that the empty case found in the store and the bullet removed from Mr. Hill's body had been fired from the automatic pistol recovered by Officer Lewis.

The State's evidence disclosed that the defendants were members of the Negro race and that each was sixteen years of age. Carroll had passed the tenth grade and Stewart the ninth grade in school. The defendants did not testify and did not offer evidence.

The court charged the jury as to each defendant that if the State had satisfied them beyond a reasonable doubt that the defendant Carroll and the defendant Stewart conspired and agreed to rob Mr. Hill and in the attempt to perpetrate such robbery either or both did kill Mr. Hill, it would be their duty to return a verdict of guilty of murder in the first degree as to each defendant.

The court then submitted charges of robbery with firearms and instructed the jury as to the circumstances under which the jury would be warranted in returning verdicts of guilty of the armed robbery.

The jury returned verdicts finding both defendants guilty of murder in the first degree and guilty of armed robbery. The jury as a part of its verdict finding the defendant Stewart guilty of murder in the first degree, recommended punishment be life imprisonment. In finding the defendant Carroll guilty of murder in the first degree, the jury did not make any recommendation with respect to punishment.

The court imposed these judgments: As to Carroll in the charge of murder in the first degree—death by asphyxiation, and life imprisonment as to Stewart; on the charges of robbery with firearms a sentence of 30 years as to each defendant. The defendants excepted and appealed.

*Robert Morgan, Attorney General, by Edwin M. Speas, Jr., Associate Attorney for the State.*

*Grady & Shaw by Philip C. Shaw; Corbett & Corbett by Albert A. Corbett for defendant appellants.*

HIGGINS, Justice.

[1]  The trial court after careful review concluded the defendants had failed to make out a prima facie case of discrimination against the defendants in the manner in which the trial jury was selected. The evidence, which is without contradiction, apparently refutes any claim of discrimination. The only apparent shadow in the picture is the designation of race on the tax list and the voter registration list from which the jury list was made up. However, when the purpose of the designation is understood, even the shadow is dissipated.

It is a matter of history and within the realm of common knowledge that upon emancipation many of the slaves were given the family names of their former owners. Likewise, it is a matter of common knowledge that many of the slaves remained in the vicinity of their birth so that as a result persons of both races had the same names. For example, there was Joe Brown, W. and Joe Brown, C.; John Smith, W. and John Smith, C. By indicating on the registration books the color designation, the election officials could see to it that each white and each black voted one time and neither voted twice.

Likewise the same designation on the tax records served a useful purpose. When taxes are properly listed they become liens on real property. When Joe Brown or John Smith, W. paid his

taxes his lands were cleared of the lien. When Joe Brown or John Smith, C. paid his taxes his property was cleared of the lien. Absent the designation, uncertainty and confusion could be eliminated only by going back to the lister's scrolls to determine with certainty whose land is burdened with the lien.

However, in the preparation of the jury list and the discs there was no designation of race or color. Hence the procedure followed does not lend itself to racial discrimination in jury selection because the jury list carried no distinction. In addition, the discs which contain only numbers and no names are selected and each juror identified only after the number on the disc is compared with the number on the jury list. According to the evidence, 4, 6 or 8 colored jurors reported for jury service at each term of court. The evidence does not make a prima facie case of discrimination. The jury in *State v. Lowry* and *State v. Mallory,* 263 N.C. 536, 139 S.E. 2d 870, was drawn from a jury list which carried the race designation. The defendants' objections on the grounds of discrimination are not sustained. *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768; *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765; *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457; *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386; *Whitus v. Georgia,* 385 U.S. 545, 17 L.Ed. 2d 599; *Arnold v. N. C.,* 376 U.S. 773, 12 L.Ed. 2d 77; *Brown v. Allen,* 344 U.S. 443, 97 L.Ed. 469.

[2] When the defendants challenged the State's right to introduce the confessions, the court, in the absence of the jury, conducted a detailed voir dire. Mr. Lewis, the arresting officer, had personally known the defendants and took great pains to explain their rights before he would permit them to make any statements or sign any waivers. The defendants did not offer evidence on the voir dire. Hence there were no contradictions or discrepancies in the evidence. The court properly concluded the admissions were in fact voluntarily made and were properly admissible in evidence. *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503; *State v. Lentz,* 270 N.C. 122, 153 S.E. 2d 864; *State v. Pearce,* 266 N.C. 234, 145 S.E. 2d 918; *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *Davis v. N. C.,* 384 U.S. 737, 16 L.Ed. 2d 895; *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694.

We conclude, therefore, the jury was properly chosen, the confessions were legally admitted in evidence, and the assign-

ments of error based thereon are not sustained. Nevertheless, in view of the gravity of the charges, the verdicts, and judgments, we have carefully examined the record before us and find certain errors appearing therein which we feel it our duty to correct.

[3] It appears conclusively that the armed robbery charges were proved as essential elements in the capital offense of murder in the first degree upon which the defendants were convicted. The robberies, therefore, became a part of and were merged into the murder charges. Having been so used, the defendants cannot again be charged, convicted and sentenced for these elements although the robberies constituted crimes within themselves. The following is quoted from *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326:

"Examination of the indictments, verdicts, and judgments discloses that the armed robbery charge was embraced in and made a part of the charge of murder in the first degree. Wharton's Criminal Law and Procedure, Vol. 1, Section 148, states the rule: 'It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater, . . . ' Many cases recognize and apply the same principle. Among them are *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892; *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496; *State v. Birckhead,* 256 N.C. 494, 128 S.E. 2d 838; and *State v. Bell,* 205 N.C. 225, 171 S.E. 50."

[4] Likewise the face of the record discloses the trial court pronounced the death sentence on defendant Carroll, the jury having failed to recommend life imprisonment. Heretofore, in cases involving death sentences for murder, the Supreme Court of the United States has vacated the death sentences and *remanded the cases to this Court for further proceedings.* We are forced to conclude, therefore, that in this case the State is without authority to execute a death sentence for murder in the first degree even though the jury failed to make any recommendation with respect to punishment. The reasoning seems to be that in cases wherein the state law gives either the court or the jury the option to decide whether punishment shall be death or life imprisonment, the judgment must be life imprisonment in order to obey the mandate of the Eighth Amendment to the

Constitution of the United States. *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346.

Notwithstanding the doubts in the minds of certain members of this Court concerning the validity of a death sentence for murder in the first degree, we must recognize and obey the decisions of the Supreme Court of the United States. *State v. Chandler & Hamby,* 281 N.C. 743, 191 S.E. 2d 66; *State v. Chance,* 281 N.C. 746, 191 S.E. 2d 65; *State v. Westbrook,* 281 N.C. 748, 191 S.E. 2d 68; *State v. Doss,* 281 N.C. 751, 191 S.E. 2d 70; *State v. Miller,* 281 N.C. 740, 190 S.E. 2d 841.

In view of the mandates referred to in *State v. Miller, supra,* and the other cases, we take the practical view and remand the first degree murder charge against Carroll to the Superior Court of Johnston County and direct that the judge presiding at a criminal session of the court bring the defendant and his counsel of record before the court, vacate the death sentence, and impose in lieu thereof a sentence of life imprisonment.

On the charges of armed robbery, for the reasons assigned, the verdicts as to both defendants are set aside, the judgments are vacated, and the charges dismissed.

On the charge of murder against defendant Stewart—no error.