STATE OF NORTH CAROLINA v. THOMAS JOHN REEB AND RANDY LEE SCOTT

No. 582A88

(Filed 22 April 1992)

1. **Criminal Law § 78 (NCI4th)— change of venue—pretrial publicity—denied**

     The trial court did not err in a murder prosecution by denying defendants' motions that their trials be moved to another county or that a jury be drawn from a special venire from another county due to pretrial publicity where there was no testimony that Rowan County was permeated with prejudice against the defendants; four of the jurors said they had no prior knowledge of the case; and the other eight jurors who said they had heard about the case before trial stated that they had formed no opinion as to the guilt or innocence of the defendants and would not be prejudiced by the pretrial publicity. N.C.G.S. § 15A-957.

     **Am Jur 2d, Criminal Law § 688.**

     **Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.**

2. **Jury § 6 (NCI3d)— murder—individual voir dire—denied**

     There was no abuse of discretion in a murder prosecution in the denial of individual voir dire where defendants contend-

ed that they were restricted in their examinations of prospective jurors by not being able to ask certain questions.

**Am Jur 2d, Jury §§ 197, 200.**

**3. Criminal Law § 319 (NCI4th)— murder—defendants consolidated for trial—no error**

The trial court did not err by consolidating for trial the prosecutions of two defendants for murder, assault, and armed robbery where it is apparent, considering all of the evidence, that the defendants were not deprived of a fair trial by the consolidation of their cases; the State presented plenary evidence for the jury to convict both defendants of the crimes with which they were charged; and inconsistencies between a witness's testimony at the preliminary hearing and at trial does not rise to the level of antagonistic defenses which require severance of the charges against defendants. N.C.G.S. § 15A-927(c)(2).

**Am Jur 2d, Trial §§ 157, 158, 170.**

**Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.**

**4. Evidence and Witnesses § 1025 (NCI4th)— hearsay—statement against interest—no corroborating circumstances**

The trial court did not err in a prosecution for murder, assault and armed robbery by excluding a statement made to the witness by defendant Scott while he was in jail. The record does not show what the testimony would have been if the witness had been allowed to finish her answer; if the answer was against penal interest, it was not accompanied by corroborating circumstances which clearly indicated the trustworthiness of the statement; and the rule of *Chambers v. Mississippi*, 410 U.S. 284, does not apply. N.C.G.S. § 8C-1, Rule 804.

**Am Jur 2d, Evidence § 610.**

**Admissibility, as against penal interest, in criminal case of declaration of commission of criminal act. 92 ALR3d 1164.**

STATE v. REEB

[331 N.C. 159 (1992)]

5. **Criminal Law § 775 (NCI4th)— voluntary intoxication— instructions—harmless error**

There was no prejudicial error in a prosecution for murder, assault and armed robbery in an erroneous instruction on voluntary intoxication as it affected defendants' ability to premeditate and deliberate in forming the intent to kill the victim where the evidence fell far short of showing that defendants were so intoxicated that the State could not prove they formed an intent. The defendants contended that there was prejudice in that the instruction took the matter of intoxication away from consideration by the jury, but the Supreme Court was confident that the jury would not have found that either of the two defendants was so intoxicated that he could not form an intent if the instruction had not been given.

**Am Jur 2d, Homicide § 517; Trial §§ 1279, 1280.**

6. **Assault and Battery § 13 (NCI4th)— acting in concert—evidence sufficient**

The trial court did not err by denying defendant Scott's motion to dismiss an assault charge based on acting in concert where there was evidence that the defendants went together to the home of the victims with the intent to rob them; defendants were armed so that they could carry out this plan; after two people were sent from the home, defendants conferred softly in the kitchen; defendant Reeb immediately returned to the room where the victim was being held and fired a pistol at her, but did not hit her; after the other victim was shot, there was a further colloquy between defendants; and the first victim was then shot by Reeb.

**Am Jur 2d, Assault and Battery § 11.**

7. **Criminal Law § 793 (NCI4th)— acting in concert—instruction— no error**

There was no error in an armed robbery and assault prosecution in the court's instructions that, if two persons join in a common purpose to commit robbery, each of them actually present is guilty as a principal if the other commits that crime and is also guilty of any other crimes committed by the others in pursuance of the common purpose or as a natural and probable consequence thereof, and also that, if two or more persons act together with a common purpose to commit armed robbery,

each of them is held responsible for the actions of the others done in the commission of the crime. The first cited portion of the charge is a correct statement of the law, and the second a correct application of the law.

**Am Jur 2d, Criminal Law §§ 163, 166-178.**

8. **Assault and Battery § 13 (NCI4th)— aiding and abetting— instruction—no error**

There was no plain error in an assault prosecution where the court instructed the jury that, if they did not find a common purpose of aiding and abetting, they would decide whether the evidence shows beyond a reasonable doubt that each of the defendants is guilty of the crime as charged, defendant contended that there was no evidence that he committed an assault except as an aider and abettor or while acting in concert, and defendant did not object to this portion of the charge. This portion of the charge did not have a probable impact on the jury's finding of guilt.

**Am Jur 2d, Criminal Law §§ 163, 166-178.**

9. **Homicide § 10 (NCI4th)— premeditation and deliberation— acting in concert or aiding and abetting—evidence sufficient**

There was no error in not dismissing the charge of murder against defendant Scott based on premeditation and deliberation and not arresting judgment on the underlying felony of armed robbery where defendant Scott went to the victim's home armed with a pistol; he was the first person to draw his gun; he conferred with defendant Reeb in the kitchen immediately before the killing; both defendants then returned to the room where the victims were being kept and defendant Reeb fired at Ms. Hensley but missed; and Reeb then shot and killed Mr. Grade. This was evidence from which the jury could conclude that defendants planned the murder in the kitchen and returned to the room to carry it out with defendant Scott being there to assist defendant Reeb.

**Am Jur 2d, Criminal Law §§ 163, 166-178.**

10. **Homicide § 512 (NCI4th)— first degree murder—instructions— premeditation and deliberation**

There was no plain error in a prosecution for assault, armed robbery and murder where the court lumped the two defendants together so that the jury was instructed that to

find the defendants guilty the jury must find "defendants acted after premeditation and deliberation" and that the "defendants act[ed] with deliberation." At another place in the charge, the court told the jury that, although the cases had been consolidated for trial, the burden of proof was on the State to prove the guilt of each defendant. This adequately explained to the jury that it should not find one defendant guilty because it found the other defendant guilty.

**Am Jur 2d, Homicide § 501.**

**11. Homicide § 496 (NCI4th)— premeditation and deliberation— consideration of threats and use of grossly excessive force**

There was no error in a murder prosecution where the trial court instructed the jury that it could consider, in determining premeditation and deliberation, whether the two defendants used grossly excessive force or made any threats or declarations concerning the killing. The evidence showed that defendant Scott was the first to draw a gun and that he said at that time, "[t]his ain't no joke," which constitutes evidence of a threat, and there was excessive force if the jury found that one victim was shot while the defendants were acting in concert and the victim was bound and lying helpless on the floor.

**Am Jur 2d, Homicide §§ 439, 501.**

**12. Evidence and Witnesses § 3082 (NCI4th)— inconsistent statements—preliminary hearing—admissible**

There was no prejudicial error in the admission by defendant Reeb of a transcript of the preliminary hearing to impeach a witness's trial testimony by means of inconsistent statements where defendant Scott contended that the evidence did not lessen Reeb's culpability but increased Scott's culpability. The jury could have found defendant Scott guilty if they believed the witness's testimony at trial or at the preliminary hearing.

**Am Jur 2d, Witnesses §§ 596, 597, 603.**

**13. Criminal Law § 414 (NCI4th)— murder—introduction of evidence by codefendant—concluding argument**

The Supreme Court declined to review Rule 10 of the General Rules of Practice for the Superior and District Courts where the State was allowed the last argument to the jury

because a codefendant had introduced into evidence the transcript of a witness's testimony at a preliminary hearing.

**Am Jur 2d, Trial §§ 539, 540, 544-546.**

**14. Criminal Law § 1122 (NCI4th) — assault — aggravating factor — victim left in pain and bleeding without rendering assistance**

The trial court did not err when sentencing defendants for assault with a deadly weapon with intent to kill inflicting serious injury by finding for each defendant the nonstatutory aggravating factor that, after shooting the female victim and as part of the same transaction, defendant mercilessly left the victim who was then bleeding and in great pain, without rendering any type of assistance to her. Refusing to help a victim after the crime of assault is complete is not an inherent part of the crime, and leaving without showing mercy is not inherent in intent to kill.

**Am Jur 2d, Criminal Law §§ 598, 599.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing life sentences entered by *Friday, J.,* on 25 August 1988 at a Criminal Session of Superior Court, ROWAN County, upon jury verdicts of first degree murder. Defendants' motions to bypass the Court of Appeals as to additional judgments allowed by the Supreme Court on 20 February 1990. Heard in the Supreme Court 15 November 1990.

Each of the defendants was tried for first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury and armed robbery. The Court allowed a motion by the State to consolidate the cases for trial and denied motions by the defendants that the cases be severed.

Cindy Hensley testified for the State that on 8 December 1986 between 11:00 p.m. and midnight she was in Salisbury at the home of Gary Grade. At that time Randy Scott, his wife Brenda Scott, Cat Andrews and Thomas Reeb came to Mr. Grade's home. Randy Scott, Andrews, and Reeb drew pistols and forced Gary Grade to lie on the floor. While Andrews stood guard, Randy Scott, Brenda Scott and Tom Reeb ransacked the house. Mr. Grade was forced to open his lock box and Ms. Hensley was forced to strip

in order for the four persons to search her clothes. Ms. Hensley testified that the four persons took $500, Mr. Grade's gold ring and jewelry belonging to Ms. Hensley worth $4,000. Ms. Hensley testified that at that time Reeb bound her hands and Mr. Grade's hands behind their backs with duct tape and forced them to lie face down on the floor. Reeb then wrapped duct tape around Ms. Hensley's head and mouth.

Either Randy Scott or Reeb directed Brenda Scott and Cat Andrews to go outside. Defendants Reeb and Scott went to the kitchen. Ms. Hensley testified that after Reeb and Scott had been in the kitchen for a few moments they returned to the living room. Reeb straddled Ms. Hensley and put a pillow over her face as she struggled. A gun was fired. The bullet missed her but she lay still pretending she was dead. She testified that she then saw Reeb straddle Mr. Grade and point the pistol at him. She closed her eyes and heard the gun fire. Mr. Grade died from the gunshot.

Ms. Hensley testified further that after Mr. Grade had been shot, Reeb returned to her, put a pillow over her face and shot her in the face. Before Reeb and Scott left the house one of them said "she's alive," "just let her die." "She'll die anyway." "Let her die slow."

On 10 December 1986 the defendant Reeb went to the home of Donna Wright. Ms. Wright told Reeb that she had read of the shooting in the newspaper. Reeb said, "I know it." "I shot the cunt twice." "She should be dead." "I blowed the son of a bitch's brains out." Reeb then drew his gun and said, "if you say anything, you'll get the same thing."

Each of the defendants was convicted of first degree murder based on premeditation and deliberation and on felony murder. Each of them was also convicted of armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. After a sentencing proceeding, the jury did not recommend the death penalty for either defendant.

Each of the defendants was sentenced to life in prison for first degree murder. After finding that the aggravating factors outweighed the mitigating factors, the court sentenced each defendant to twenty years for the assault with a deadly weapon with intent to kill resulting in serious injury to commence at the expiration of the life sentences. Reeb was sentenced to an additional

STATE v. REEB

[331 N.C. 159 (1992)]

thirty years for armed robbery. Scott was sentenced to an additional fourteen years for armed robbery.

The defendants appealed.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant appellant Randy Lee Scott.*

*James R. Glover for defendant appellant Thomas John Reeb.*

WEBB, Justice.

[1]    Both defendants assign error to the denial of their motions, made prior to trial and repeated immediately before the trial commenced, that their trials be moved to another county or that a jury be drawn from a special venire from another county. The defendants contended that the pretrial publicity made it impossible for the defendants to receive fair trials in Rowan County. The removal of a case to another county or the drawing of a special venire from another county is governed by N.C.G.S. § 15A-957 which provides in part:

> If, upon motion of the defendant, the court determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial, the court must either:
>
> (1)  Transfer the proceeding to another county in the prosecutorial district as defined in G.S. 7A-60 or to another county in an adjoining prosecutorial district as defined in G.S. 7A-60, or
>
> (2)  Order a special venire under the terms of G.S. 15A-958.

This Court has interpreted this section in many cases. *See State v. Hunt*, 325 N.C. 187, 381 S.E.2d 453 (1989); *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988); *State v. Abbott*, 320 N.C. 475, 358 S.E.2d 365 (1987); *State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984); and *State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984).

The above cases establish that the purpose of N.C.G.S. § 15A-957 is to insure that jurors decide cases based on evidence introduced at trial and not on something they have heard outside the court-

STATE v. REEB

[331 N.C. 159 (1992)]

room. The burden is on the moving party to show that due to pretrial publicity, there is a reasonable likelihood that defendant will not receive a fair trial. If newsmedia reports are relied on by the moving party and such accounts are factual and consist of matters which may be introduced at trial, a motion for change of venue should not ordinarily be granted. In most cases, a showing of identifiable prejudice to the accused must be made, and relevant to this inquiry is testimony by potential jurors that they can decide the case based on the evidence presented and not on pretrial publicity. However, we held in *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983), that when a moving party produces evidence in the form of uncontradicted testimony from several witnesses that a county is so permeated with a prejudice against him that he cannot receive a fair trial, the trial court should have moved the trial or ordered a special venire from another county without a showing of identifiable prejudice among the jurors selected. The size of the county's population is relevant to this issue. Some of our cases have said that it is within the discretion of the trial court as to whether to move the case or order a special venire. The statute requires, however, that if the moving party makes a sufficient showing of prejudice the court must grant the motion.

The evidence in this case in support of the motion to move the trial showed that there were articles appearing in several newspapers including The Salisbury Post, The Daily Independent, published in Kannapolis, The Dispatch, published in Lexington, and The Greensboro News and Record from the time of the incident until 1 April 1987. The articles reported the shooting and developments from it. Most of the articles were factual and reported matters that were introduced as evidence at the trial. In addition there were references to an "execution style slaying," and a statement by the sheriff that it was "pretty obvious" that the killing was "drug related." There was also an article in which it was reported that Randy Scott, Brenda Scott and Cat Andrews had admitted lying to the sheriff as to the fourth person involved in the incident. There was also an article that reported that the defendant Reeb had pled guilty in a federal court in Baltimore to charges of conspiracy to distribute marijuana, income tax evasion and a related drug count. Other articles said that the defendant Reeb was a member of a family that had a drug smuggling operation from Key West, Florida, to Baltimore, Maryland, that his brother was to be tried in Key West for first degree murder based on

an execution style killing, and that he operated an exotic bird farm in Randolph County which was a front for a marijuana distribution system. Similar reports were broadcast over radio stations in the area.

The newspaper articles and news accounts contained a considerable amount of material which was not factual and could not have been introduced at trial. We must determine whether the defendants have shown that due to pretrial publicity there was a reasonable likelihood that they could not receive a fair trial so that it was error for the superior court not to move the trial or order a special venire.

In this case there was not testimony, as in *Jerrett*, that Rowan County was permeated with prejudice against the defendants. The defendants relied on the newspaper articles and the news accounts to show prejudice. We cannot hold that the two judges who denied the motions committed error by doing so. Four of the jurors said they had no prior knowledge of the case. The other eight jurors who decided the case and who said they had heard about the case before the trial stated that they had formed no opinion as to the guilt or innocence of the defendants and would not be prejudiced by the pretrial publicity. We hold the defendants have failed to show identifiable prejudice by the denial of their motions.

[2] The defendants also contend it was error not to allow individual voir dire examinations of each juror. They say that they were restricted in their examinations of prospective jurors by not being able to ask certain questions of prospective jurors in the presence of the entire panel. Motions for an individual voir dire examination of prospective jurors are addressed to the sound discretion of the trial judge. In *State v. Crandell*, 322 N.C. 487, 369 S.E.2d 579 (1988), we held it was not an abuse of discretion to deny an individual voir dire of potential jurors in a case in which the defendant contended the case should be moved to another county for trial because inflammatory newspaper accounts had prejudiced his right to a fair trial in the county in which he was to be tried. We find no abuse of discretion in this case.

[3] In their next assignment of error each defendant contends it was error to consolidate the cases for trial and to deny his motion to sever. Each of the defendants was charged with accountability for each of the offenses and the charges against them were

properly joinable for trial. N.C.G.S. § 15A-926(b)(2) (1988). N.C.G.S. § 15A-927(c)(2) provides in part:

> The court, on motion of the prosecutor, or on motion of the defendant . . . must deny a joinder for trial or grant a severance of defendants whenever:
>
> (a) If before trial, it is found necessary to protect a defendant's right to a speedy trial, or it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants[.]

The defendants contend a severance of their cases for trial was necessary "to promote a fair determination of the guilt or innocence of" both of them.

Both defendants say their defenses were antagonistic. Defendant Reeb says the conflict between the two defenses arose because Ms. Hensley's testimony at trial contradicted her testimony at the preliminary hearing. At the preliminary hearing, Ms. Hensley testified she did not see or hear Mr. Grade being shot but did see the gun in defendant Scott's hands immediately before the shooting and that both defendant Reeb and defendant Scott came to her and put the pillow on her face just before she was shot. At the trial, she testified that defendant Reeb shot Mr. Grade and then shot her and that defendant Scott did not participate in the shooting. At trial, defendant Reeb cross-examined Ms. Hensley as to her testimony at the probable cause hearing in an effort to decrease his culpability and to increase the culpability of defendant Scott.

Defendant Reeb argues that this change in Ms. Hensley's testimony required that each defendant guard against the evidence of the other as much as against the evidence of the State. It permeated the jury selection which is shown by each defendant's challenge of jurors because they had connections with the other defendant's lawyers. Defendant Scott says the only evidence offered by either of the defendants was the transcript of the probable cause hearing and some telephone records introduced by defendant Reeb in order to prove the guilt of defendant Scott. He says that the introduction of this evidence caused both defendants to lose the right to make the closing argument.

Defendant Scott argues further that his defense was that he did not intend for Ms. Hensley to be assaulted, that he did not

intend for Mr. Grade to be killed, and that he did not help defendant Reeb in any way. For that reason he was not guilty of assault or murder by premeditation and deliberation. He could only be guilty of felony murder which would mean judgment should be arrested on the armed robbery charge. He contends he did not receive a fair trial when defendant Reeb was allowed to provide, through the cross-examination of Ms. Hensley, evidence that he was involved in the killing and the assault.

We cannot hold that the defendants were deprived of a fair trial by the joinder of their cases. In *State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), we said:

Prejudice would ordinarily result where codefendants' defenses are so irreconcilable that "the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." . . . Severance should ordinarily be granted where defenses are so discrepant as to pose an evidentiary contest more between defendants themselves than between the state and the defendants. . . . To be avoided is the spectacle where the state simply stands by and witnesses "a combat in which the defendants . . . destroy each other."

When we consider all the evidence it is apparent that the defendants were not deprived of a fair trial by the consolidation of their cases. The State presented plenary evidence for the jury to convict both defendants of the crimes with which they were charged. The cross-examination of Ms. Hensley revealed some inconsistency between her testimony at trial and her testimony at the preliminary hearing. The court instructed the jury that it would not consider the testimony elicited on cross-examination as substantive testimony but would consider it only as bearing on the credibility of the witness. If the jury believed either version of Ms. Hensley's testimony, it could have convicted both defendants of the crimes with which they were charged based on the theory that each of them was the actual perpetrator of the crime or was aiding or abetting or acting in concert with the other. *See State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987). The inconsistency between Ms. Hensley's testimony at the preliminary hearing and the trial does not rise to the level of antagonistic defenses which requires severance of the charges against the defendants. *State v. Short*, 322 N.C. 783, 370 S.E.2d 351 (1988); *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986).

[4] The defendant Reeb next assigns error to the exclusion of testimony by Donna Wright as to a statement made to her by Randy Scott while he was in jail. Donna Wright testified on cross-examination that on the Sunday after Cat Andrews, Randy Scott and Brenda Scott were arrested, she visited them in jail. At this time, William Morgan had been arrested and charged with being the fourth person involved in the shooting. The following colloquy then occurred:

> Q. And you say that you told the law enforcement authorities this about Mr. Reeb as soon—well, that the reason you didn't tell them was he wasn't apprehended. Is that what you're saying?

> A. Yes, ma'am. Until I could speak to my sister and Morris Andrews and Randy Scott on Sunday after they were arrested on Wednesday, because then they said it was—Randy says it was Bill Morgan that—

> MR. BOWERS: The State objects.

> THE COURT: Sustained.

> MR. BOWERS: Move to strike.

> THE COURT: Sustained, somebody said. Disregard that statement, Members of the jury.

Reeb contends that if the objection had not been sustained Donna Wright would have testified that Randy Scott told her William Morgan was with him at the time of the shooting. He says this testimony was admissible as an exception to the hearsay rule and that *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed.2d 297 (1973), requires that it be admitted under the due process clause of the United States Constitution.

The first difficulty with Reeb's argument is that the record does not show what testimony Donna Wright would have given if she had been allowed to finish her answer. It is speculation that she would have said Randy Scott told her William Morgan was with him at the time of the shooting. If the record does not show what a witness' answer would have been, the exclusion of the testimony is not shown to be prejudicial. *State v. Fountain*, 282 N.C. 58, 191 S.E.2d 674 (1972).

Assuming Donna Wright would have answered as Reeb contends, it was not error to exclude this testimony. The defendant

says the testimony was admissible under N.C.G.S. § 8C-1, Rule 804 which provides in part:

> (b) *Hearsay exceptions.* — The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
>> (3) Statement Against Interest. — A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement.

If the statement by defendant Scott was against his penal interest, it was not accompanied by corroborating circumstances which clearly indicated the trustworthiness of the statement. There was no other evidence that William Morgan was with defendant Scott at the time of the shooting and there were no other circumstances that indicated defendant Scott was telling the truth. The statement was not admissible as a declaration against a penal interest. *See State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989) and *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988).

We also hold that *Chambers v. Mississippi* does not require the admission of Donna Wright's statement. In that case, the defendant was prevented under the hearsay rule, which in Mississippi contained an exception for declarations against pecuniary interest but not penal interests, from introducing testimony by three separate witnesses that a certain person told them he had committed the murder for which the defendant was charged. The defendant was also prevented from cross-examining a hostile witness as to crucial evidence in the case because the defendant had called him as a witness. The Supreme Court said that the way the hearsay rule and the rule against a party's impeaching his own witness was applied in that case, prevented the defendant from presenting some very credible testimony and thus violated his right to due process. The Supreme Court was careful to say it did not condemn the

use of the hearsay rule in other cases. We are confident that the application of the hearsay rule in this case did not prevent defendant Reeb from introducing any credible testimony. The rule of *Chambers* does not apply.

[5] Both defendants assign error to the court's instruction on voluntary intoxication as it affected their ability to premeditate and deliberate in forming the intent to kill Mr. Grade. The court charged the jury as follows:

> If, as a result of intoxication or drug condition, the defendants, or one of them or both of them, did not have the specific intent to kill the deceased formed after premeditation and deliberation, that is, that they were utterly incapable of forming this intent, then they are not guilty of first-degree murder. In such a situation, it is said that the grade of the offense is reduced to murder in the second degree.

It was error to give this charge. *See State v. McQueen,* 324 N.C. 118, 377 S.E.2d 38 (1989) and *State v. Mash,* 323 N.C. 339, 372 S.E.2d 532 (1988). In *McQueen* and *Mash,* we held it was error to tell the jury the defendant must be utterly incapable of forming the intent to kill. The question is whether the jury, considering all the evidence including the evidence of intoxication, finds that the State has proved beyond a reasonable doubt that defendants formed the intent to kill after premeditation and deliberation.

We hold that although there was error in the instructions to the jury, it was harmless error. The defendants did not introduce any evidence of their intoxication but relied on the State's evidence. Cindy Hensley testified that she was at Gary Grade's residence on 8 December 1986 when the two defendants accompanied by Brenda Scott and Cat Andrews arrived. She testified that everyone consumed beer, did a line or two of cocaine and passed around a marijuana cigarette. There was no definitive evidence as to what amount of beer either of the defendants consumed, what amount of cocaine either of them consumed, or how much either of them smoked from the marijuana cigarette that was shared with six persons. The action of neither of them was that of a person out of control as was the case of the defendant in *Mash.* They were deliberate in the way they conducted themselves. They took the beer cans when they left which would show they were able to reason to the extent they did not want to leave a clue.

It is not enough that the defendants may have been intoxicated. The evidence must show that they were so intoxicated the State could not prove they formed an intent. The evidence falls far short of that.

The defendants argue that if they were not entitled to a charge on intoxication, it was harmful to them to give the intoxication charge which was used in this case. They say this is so because if no charge on intoxication was given, the jury would have known the defendants were intoxicated to some extent and would have used their knowledge of the effect alcohol has on a person's reasoning power to determine whether they formed an intent to kill Mr. Grade. They say the jury could not do this, after the erroneous instruction given by the court, because it took the matter of intoxication away from consideration by the jury.

We are confident that with the paucity of evidence that either of the two defendants was so intoxicated that he could not form an intent, the jury would not have so found if the instruction had not been given.

[6] The defendant Scott assigns error to the court's denial of his motion to dismiss the charge against him of the assault on Ms. Hensley. He contends there was not sufficient evidence to show he was acting in concert with the defendant Reeb in the assault on Ms. Hensley or that he was an aider or abettor in the assault. The defendant Scott relies on *State v. Forney*, 310 N.C. 126, 310 S.E.2d 20 (1984), in which we held that there was insufficient evidence to convict a defendant of a sexual assault on the theory of acting in concert when the evidence showed the defendant and several other persons broke into a home and two of the persons raped the occupant of the house.

*Forney* does not govern this case. There is evidence that defendant Scott was acting in concert with defendant Reeb in the assault on Ms. Hensley, in addition to the defendant Scott's presence when the assault was committed. The State's evidence showed that the defendants went together to the home of Mr. Grade and Ms. Hensley with the intent to rob them. They were armed so that they could carry out this plan. After Cat Andrews and Brenda Scott were sent from the home, defendants Reeb and Scott conferred softly in the kitchen. Immediately after this conference, Reeb returned to the room in which Ms. Hensley was being held and fired the pistol at her but she was not hit. After Mr. Grade

was shot there was a further colloquy between Scott and Reeb after which Reeb shot Ms. Hensley. This is evidence from which the jury could find that Scott was acting in concert with Reeb or aiding and abetting him in the assault on Ms. Hensley. This assignment of error is overruled.

[7] The defendant Scott next argues error to the charge. The court, while charging on the assault charge, instructed the jury as follows:

> [I]f two persons join in a common purpose to commit robbery, each of them, actually present, is not only guilty as a principal if the other commits that crime, but is also guilty of any other crimes committed by the others in pursuance of the common purpose to rob or as a natural and probable consequence thereof.
>
> In North Carolina, for a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute a crime. If two or more persons in North Carolina act together with a common purpose to commit armed robbery, each of them is held responsible for the actions of the others done in the commission of the crime.

The defendant Scott contends this charge is in error because it instructs the jury that a defendant who is charged with acting in concert to commit a certain crime may be convicted for the commission of another unconnected crime committed by his code-fendant. The defendant relies on *State v. Hunt*, 91 N.C. App. 574, 372 S.E.2d 744 (1988), *disc. rev. improv. allowed*, 325 N.C. 430, 383 S.E.2d 656 (1989).

The first difficulty for the defendant Scott is that he did not object to this portion of the charge and he is prohibited by Rule 10(b)(2) of the Rules of Appellate Procedure from assigning error to it. Nevertheless, this portion of the charge is a correct statement of the law. In this state, if two or more persons join in a purpose to commit a crime each of them is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuit of the common purpose. *State v. Miller*, 315 N.C. 773, 340 S.E.2d 290 (1986); *State v. Westbrook*, 279 N.C. 18, 181 S.E.2d 572 (1971), *death penalty vacated*, 408 U.S. 939, 33 L.Ed.2d 761 (1972). This is what the court charged the jury. The court also charged that a person acting in concert to commit a crime would be guilty of any other crime

that occurred as a natural and probable consequence of the crime for which the common plan was formed. This is a correct application of the law.

*Hunt* is not helpful to defendant Scott. In that case the Court of Appeals awarded a new trial because of a charge in which it was said the defendant could be convicted of second degree murder if the jury found the defendant had acted in concert with his codefendant to commit robbery. The difference between the charge in *Hunt* and in this case is that here the court charged that the defendant could be convicted of assault if the assault occurred pursuant to the carrying out of the common purpose to commit a robbery.

[8] The defendant Scott also contends that it was error for the court to charge as follows:

[I]f you do not find a common purpose of aiding and abetting, you will decide whether the evidence shows beyond a reasonable doubt that each one of the defendants is guilty of the crime as charged in the Bill of Indictment.

The defendant Scott contends there was not any evidence to show he committed an assault except as an aider and abettor or while acting in concert and it was error to submit this charge. *See State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975). The defendant did not object to this portion of the charge. In reviewing the entire record, we determine that this portion of the charge did not have a probable impact on the jury's finding of guilt. It was not plain error. *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). This assignment of error is overruled.

[9] The defendant Scott contends that although there was sufficient evidence to convict him of felony murder there was no evidence that the murder was committed by him after premeditation and deliberation. For that reason, he contends it was error not to dismiss the charge of murder based on premeditation and deliberation and to arrest judgment on the underlying felony of armed robbery on which the felony murder was based. *See State v. Carroll*, 282 N.C. 326, 193 S.E.2d 85 (1972).

The defendant Scott relies on *State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987), in which we held that there was not sufficient evidence of murder based on premeditation and deliberation to

STATE v. REEB

[331 N.C. 159 (1992)]

submit to the jury. In that case, the evidence showed the defendant participated in an armed robbery in which the codefendant killed a clerk in the store. There was no evidence that the defendant aided in the killing. In contrast to the evidence in *Reese*, there is evidence in this case that the defendant Scott aided and abetted or was acting in concert with defendant Reeb in the killing of Mr. Grade.

The defendant Scott went to Mr. Grade's home armed with a pistol. He was the first person to draw his gun. Immediately before the killing he conferred with defendant Reeb in the kitchen. Defendants Reeb and Scott then returned to the room in which Mr. Grade and Ms. Hensley were being kept and defendant Reeb fired at Ms. Hensley but missed. He then shot and killed Mr. Grade. This was evidence from which the jury could conclude that defendants Scott and Reeb planned the murder in the kitchen and returned to the room to carry it out with defendant Scott being there to assist defendant Reeb. This supports a murder conviction of defendant Scott as an aider and abettor or by acting in concert. This assignment of error is overruled.

[10] The defendant Scott next contends there was error in the charge on premeditation and deliberation. Once again the defendant Scott did not object to this portion of the charge and we must examine it under the plain error rule. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375. The defendant says first that in charging on felony murder, the court instructed the jury that the State did not have to prove premeditation and deliberation for the jury to convict the defendant Scott of first degree murder. Although the defendant Scott concedes this is a correct statement of the law, he argues it left the jury with the impression that the State did not have to prove premeditation and deliberation to convict him on that theory.

In charging on murder after premeditation and deliberation, the court lumped the two defendants together so that the jury was instructed that to find the defendants guilty the jury must find "defendants acted after premeditation" and that the "defendants act[ed] with deliberation." The defendant Scott says that this did not require the jury to find he premeditated and deliberated the killing but allowed them to find him guilty if it found defendant Reeb premeditated and deliberated the killing. We cannot hold that the jury was misled by this charge. At another place in the

STATE v. REEB

[331 N.C. 159 (1992)]

charge, the court told the jury that although the cases had been consolidated for trial the burden of proof was on the State to prove the guilt of each defendant. This adequately explained to the jury that it should not find one defendant guilty because it found the other defendant guilty. We cannot hold that there was plain error in this portion of the charge.

[11]  The defendant Scott also says it was error for the court to charge that in determining whether there was premeditation and deliberation, the jury could consider whether the two defendants used grossly excessive force or made any threats or declarations concerning the killing. The defendant Scott says there was no evidence of grossly excessive force or any threats made by him concerning the killing. He says, relying on *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80, that it is plain error for the court to instruct a jury on a theory not supported by the evidence. In this case the evidence showed that the defendant Scott was the first person to draw a gun. He said at that time, "[t]his ain't no joke." That constitutes evidence of a threat. If the jury found that Mr. Grade was shot while the defendants were acting in concert and Mr. Grade was bound and lying helpless on the floor, this was certainly excessive force so far as any threat Mr. Grade could have been to the defendants. This assignment of error is overruled.

[12]  The defendant Scott also assigns error to the court's allowing the defendant Reeb to impeach Cindy Hensley by the use of a transcript of her testimony at the preliminary hearing. Ms. Hensley testified at the preliminary hearing that "they" assaulted her and she could not tell who held her down and who assaulted her. At trial she testified that all the acts of the assault were done by the defendant Reeb. At the preliminary hearing she testified that the defendant Scott thought he was owed money by Mr. Grade and by her. At trial she testified that the defendant Reeb demanded his $10,000. She also testified at the preliminary hearing that after defendant Reeb shot Mr. Grade she thought defendant Scott tried to help with the pistol which was jammed so that it could be fired again. At trial she testified that when she saw defendant Scott holding the pistol he was "like jacking it back or something—I don't know. I don't know, trying to get it away or just jacking it back up."

STATE v. REEB

[331 N.C. 159 (1992)]

The defendant Scott objected to questions propounded by defendant Reeb's counsel to Ms. Hensley on cross-examination based on her testimony at the preliminary hearing. The court overruled these objections and allowed the transcript to be introduced into evidence. In ruling on the defendant Scott's objection, the court said:

> I appreciate your predicament. The Court takes a different view of it. The Court takes the point of view that the State has at least prima facie shown an agreement to enter into a common purpose, both parties being willing partners in armed robbery and murder, and when both are—whatever happens to each, happens to the other. That's the whole theory of aiding and abetting. They're guilty of all crimes like that, which are of common design or common intent to commit a crime. I think the Court will have to overrule your motion based on that principle of North Carolina law.

The defendant Scott objected to the questions concerning Ms. Hensley's testimony at the preliminary hearing and the introduction of the transcript of the preliminary hearing on the ground that this evidence should have been excluded under N.C.G.S. § 8C-1, Rule 403 which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The defendant Scott concedes that the court's ruling pursuant to Rule 403 is discretionary. *State v. Penley*, 318 N.C. 30, 347 S.E.2d 783 (1986). He says in this case there was error because the court did not exercise its discretion but made its ruling under a misapprehension of the law. He argues that it is not the law, as stated by the superior court, that when the State has made a prima facie case that two persons are acting in concert or aiding and abetting each other in the commission of a crime, any evidence admissible against one of them is admissible against the other. Defendant Scott says that this evidence did not help defendant Reeb because it did not lessen his culpability for the crime but it was very damaging to defendant Scott because it increased his culpability. He says this is a perfect example of testimony whose probative value is outweighed by the danger of unfair prejudice.

Assuming it was error for the court not to exercise its discretion in ruling on the admissibility of this evidence, we cannot hold that had the error not been committed a different result would have been reached at the trial. N.C.G.S. § 15A-1443 (1988); *State v. Milby*, 302 N.C. 137, 273 S.E.2d 716 (1981). The jury could have found the defendant Scott guilty if they believed Ms. Hensley's testimony at the trial or her testimony at the preliminary hearing. We hold this was harmless error.

[13] The defendant Scott next assigns error to the court's allowing the State to have the last argument to the jury because defendant Reeb introduced into evidence the transcript of Ms. Hensley's testimony at the preliminary hearing. He concedes that the General Rules of Practice for the Superior and District Courts, Rule 10, provides that the State has the last argument in this situation. *See State v. Taylor*, 289 N.C. 223, 221 S.E.2d 359 (1976). The defendant Scott asks us to reconsider the propriety of this rule. This we decline to do.

[14] Both defendants assign error to the finding of an aggravating factor which the court used to enhance their sentences. Each defendant was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury. This is a Class F felony which carries a presumptive sentence of six years in prison. The maximum sentence is imprisonment for twenty years. The court in each case sentenced the defendant to twenty years in prison after finding the following nonstatutory aggravating factor:

> After shooting the female victim and as part of the same transaction, the defendant mercilessly left the victim who was then bleeding and in great pain, without rendering any type of assistance to her.

The defendants say that N.C.G.S. § 15A-1340.4(a)(1) says that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation." The defendants say that this portion of the statute is consistent with the policy behind the Fair Sentencing Act which proscribes the enhancement of a sentence based on factors which are an inherent part of the crime. The defendants say the General Assembly has taken these factors into account when fixing presumptive sentences and they cannot be used to enhance sentences. *See State v. Abdullah*, 309 N.C. 63, 306 S.E.2d 100 (1983). The defendants say that their leaving Ms. Hensley without helping her is a fact that has been subsumed

in the crime of assault with a deadly weapon with intent to kill inflicting serious injury.

The evidence that the defendants left Ms. Hensley without trying to help her was not necessary to prove an element of the assault charge. The assault was complete when they left the house. It may be some proof of the defendants' intent to kill. *State v. Freeman*, 326 N.C. 40, 387 S.E.2d 158 (1990). By the same token, refusing to help a victim after the crime of assault is complete is not an inherent part of the crime. It is a factor which makes the assault more reprehensible.

The defendants argue further that one half the aggravating factor was the finding that they left the victim bleeding and in pain and these factors are inherent in the element of serious injury. The bleeding and the pain were part of the serious injury but it was the leaving of the defendants which was the gravamen of this aggravating factor. This factor is not inherent in the crime. The defendants say the other half of this aggravating factor is that the defendants showed no mercy and left the victim without rendering aid which are inherent in the element of intent to kill. We have said that this may be some evidence of intent to kill but it was not necessary in this case to prove this element. Leaving without showing mercy is not inherent in intent to kill. The element of intent to kill could have been proved without any reference to this factor.

The defendants rely on *State v. Bates*, 76 N.C. App. 676, 334 S.E.2d 73 (1985), in which the Court of Appeals held it was error to find as an aggravating factor, after the defendant had pled guilty to manslaughter, that "[t]he defendant left the victim dying in a field and did not seek to have help sent to him." *Id.* at 678, 334 S.E.2d at 74. In that case, the defendant had been badly wounded in a fight with the deceased and was unable to aid the deceased. *Bates* is not precedent for this case.

The defendants also rely on *State v. Newton*, 82 N.C. App. 555, 347 S.E.2d 81 (1986), *cert. denied*, 318 N.C. 699, 351 S.E.2d 756 (1987). In that case, the defendant was convicted of assault with a deadly weapon with intent to kill inflicting serious injury. The Court of Appeals held it was error to find as a statutory aggravating factor that the offense was especially heinous, atrocious or cruel because the defendant refused to help his wife after he

had shot her. The court in this case did not find the heinous, atrocious or cruel factor.

We hold that this aggravating factor was supported by a preponderance of the evidence and was reasonably related to the purposes of sentencing. *See State v. Setzer*, 61 N.C. App. 500, 301 S.E.2d 107 (1983), *cert. denied*, 308 N.C. 680, 304 S.E.2d 760 (1983).

The defendants had a fair trial free of prejudicial error.

No error.

Justice LAKE did not participate in the consideration or decision of this case.